# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNELL DEVON BUSH,<br><br>                          Petitioner,<br><br>  vs.<br><br><br>J. WALKER, Warden; TIM V. VIRGA, Warden; and DANIEL E. LUNGREN<br><br>                        Respondents. | CASE NO. 11-CV-1309 H (WVG)<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>[Doc. No. 15]<br><br>**(2) GRANTING RESPONDENTS' MOTION TO DISMISS;**<br><br>[Doc. No. 17]<br><br>**(3) ADOPTING REPORT AND RECOMMENDATION; AND**<br><br>[Doc. No. 24]<br><br>**(4) DENYING CERTIFICATE OF APPEALABILITY** |

On June 13, 2012, Petitioner Vernell Devon Bush ("Petitioner"), a state prisoner proceeding pro se, filed a Third Amended Petitioner for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("the Petition"). (Doc. No. 15.) On July 26, 2012, Respondents filed a motion to dismiss the Petition, and on September 18, 2012, Respondent filed an answer to the Petitioner. (Doc. Nos. 17, 21.) On November 19, 2012, Petitioner filed a traverse. (Doc. No. 22.) On November 29, 2012, Magistrate

Judge Gallo issued a report and recommendation ("R & R") recommending that the Court grant Respondents' motion to dismiss and deny the Petition. (Doc. No. 24.) For the following reasons, the Court grants Respondent's motion to dismiss and denies the Petition.

## BACKGROUND

Petitioner seeks relief from his conviction for second degree robbery with a criminal street gang enhancement. (Doc. Nos. 1, 15.) The following facts are taken from the California Court of Appeal's decision affirming Petitioner's conviction and sentence. (Lodgement No. 7.) The facts are presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1).

> On December 8, 2006, shortly before 8:00 a.m., [Petitioner] Bush approached Karla Madrigal, who was sitting in her car parked on Solola Avenue in the Lincoln Park area of San Diego. Madrigal was not from the neighborhood, but was talking on her cell phone while waiting to visit an aunt who lived there. Bush approached the car, dressed in red shorts and black shirt, and asked Madrigal if she was waiting for someone. Madrigal responded by rolling up the window of her car. Bush left, then came back and asked if she knew the time. Madrigal pointed to her car clock and continued to talk on her cell phone in Spanish, which Bush could not understand. Bush then lingered on the street nearby. Shortly thereafter, Madrigal got out of her car and crossed the street to enter the parking lot of her aunt's apartment complex, when she heard footsteps and looked back to see Bush running toward her and pointing a gun at her. He asked Madrigal, "What the hell are you doing here, [b****]?" and said "This is not your territory" or "you're in the wrong territory." Bush took Madrigal's cell phone away from her and said, "Give me your purse." When she resisted, he pointed the gun to her had and said, "Give me your purse or I will blow the hell out of you." Madrigal pulled her wallet and $1,200 in rent money out of her purse, and Bush took them. She then walked away while Bush continued to point the gun at her. Bush kept Madrigal's wallet, cell phone and $1,200.
>
> Bush was tried on charges of robbery and receiving stolen property arising out of the Madrigal incident, along with felony charges arising from three other incidents in which he was involved. The amended information charged Bush with criminal street gang enhancements pursuant to section 186.22, subdivision (b)(1) in connection with four felony counts (three robberies and one carjacking).
>
> During trial, the prosecution presented expert testimony from Detective William Cahill of the San Diego District Attorney's Office Gang Prosecution Unit regarding two gangs, the 5/9 Brim and Lincoln Park gangs. Cahill testified that the two gangs were allies, and both were known to frequent the area in which Madrigal was robbed. Members of the gangs would "put in work"–or commit crimes–in that area to generate

respect for themselves within the gang. Greater respect was obtained by committing bold, brazen or violent acts, such as robbery and carjacking. Commission of such crimes served to enhance the gang's fearsomeness in the community. After testifying generally about his knowledge and experience with the 5/9 Brim and Lincoln Park gangs, Cahill offered three opinions.

First: Cahill opined that Bush was a documented 5/9 Brim gang member. He based this opinion on Bush's criminal record, contacts with other gang members, the "Brim" tattoo on Bush's arm, the nature of the crimes with which Bush was charged, and a 2004 field interview by a police officer in which Bush claimed gang membership and wore a "B" belt buckle associated with the Brim gang. Cahill noted Bush had been observed by police associating with members of both gangs in the area where the Madrigal robbery and other crimes on which Bush was being tried occurred.

Cahill next opined that the robbery of Madrigal, and the other crimes with which Bush was charged, were crimes a 5/9 Brim gang member typically would commit to gain respect within the gang, instill fear within the community and benefit the gang. He explained that the Madrigal robbery, for example, took place in an area where the 5/9 Brim gang commonly "put in work," involved a brazen act of intimidation and the putting of a gun to the victim's head, and the wearing of gang colored red shorts (a color associated with the Brim gang, a "Blood" set). According to Cahill, the gang would benefit from the robbery proceeds, which would be used by gang members for partying; buying drugs, buying guns, car rims, stereos or jewelry, and possibly giving money to others less fortunate in the gang.

Cahill finally opined, over objection, that Bush committed the charged offenses "with the intent of promoting the gang and also promoting his reputation within that gang."

Bush testified in his own defense at trial. He acknowledged that he had joined the 5/9 Brim gang when he was 12 years old and still bears a "Brim" tattoo on his right arm, but claimed he left the gang four years earlier. Testifying about his robbery of Madrigal, Bush admitted he was suspicious of Madrigal's presence in the area; that he approached her "out of nowhere, blam"; and that he asked her what she was doing around there, while holding a gun in his hand so that she would see it. Bush also admitted that he took Madrigal's cell phone and told her to "get out of here."

(Id. at 2-5.)

On May 27, 2008, a jury found Petitioner guilty of three counts of second degree robbery, two counts of grand theft, one count of carjacking, and one count of receiving stolen property. (Lodgment No. 1 at 145-59.) As to four of the convictions, the jury found true the allegations that Petitioner used a firearm. (Id.) As to one of the robbery counts, the jury found true the allegation that Petitioner committed the act for the

1 benefit of a criminal street gang. (Id.) On August 4, 2008, the Court sentenced Petitioner to 40 years imprisonment. (Id. at 209-10.)

On August 12, 2008, Petitioner appealed his convictions. (Lodgement No. 1 at 212-14.) On November 10, 2009, the California Court of Appeal affirmed in part and reversed in part Petitioner's convictions. (Lodgement No. 7.) The Court of Appeal reversed Petitioner's conviction for receiving stolen property and ordered the trial court to amend the abstract of judgment to delete that conviction. (Id.) On November 18, 2009, Petitioner filed a petition for review in the California Supreme Court. (Lodgement No. 8.) On January 13, 2010, the California Supreme Court denied the petition. (Lodgment No. 9.) On January 19, 2010, the California Court of Appeal issued a remittitur which stated that the decision of the Court of Appeal became final on that date. (Lodgment No. 10.)

On June 2, 2011, Petitioner filed a Petition for Writ of Habeas corpus in federal court. (Doc. No. 1.) The Court dismissed the petition without prejudice for failure to name a proper respondent. (Doc. No. 4.) On August 22, 2011, Petitioner filed a First Amended Petition, and on October 17, 2011, Petitioner filed a Second Amended Petition. (Doc. Nos. 7, 9.) These two amended petitions were dismissed without prejudice on exhaustion grounds. (Doc. Nos. 8, 11.) On June 13, 2012, Petitioner filed a Third Amended Petition ("the Petition"). (Doc. No. 15.) In the Petition, Petitioner alleges (1) that the imposition of a gang sentencing enhancement violated his due process rights, and (2) that the trial court erred when it allowed the gang expert to testify about Petitioner's intent. (Id. at 6-7.)

## DISCUSSION

On November 29, 2012, Magistrate Judge Gallo issued a R & R recommending that the Court grant Respondents' motion to dismiss and deny the Petition. (Doc. No. 24.) The district court may accept, reject, or modify the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). If neither party objects to the findings and recommendations of the magistrate judge, the district court is not required

to make a de novo determination. See id.

## I. Statute of Limitations

In their motion to dismiss, Respondents argue that the Petition should be dismissed because it is barred by the applicable statute of limitations. (Doc. No. 17 at 2-5.) Because the Petition was filed after April 24, 1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Pursuant to 28 U.S.C. § 2244(d)(1), a one-year period of limitation applies to an application for a writ of habeas corpus filed "by a person in custody pursuant to the judgment of a State court." The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see also Gonzalez v. Thaler, 132 S. Ct. 641, 646 (2012) ("28 U.S.C. § 2244(d)(1)(A), establishes a 1-year limitations period for state prisoners to file federal habeas petitions, running from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'").

### A. Analysis

Petitioner's judgment became final on April 13, 2010, and the limitations period began to run on that date. "A judgment becomes final for purposes of 28 U.S.C. § 2244(d) when the period for filing a petition for certiorari in the U.S. Supreme Court expires." Harris v. Carter, 515 F.3d 1051, 1053 n.1 (9th Cir. 2008). "Petitions for certiorari must be filed in the U.S. Supreme Court within 90 days after the supreme

court of the state in which the prisoner convicted issues its opinion or denies review." Id. The California Supreme Court denied Petitioner's petition for review on January 13, 2010.[1] (Lodgement No. 9.) Therefore, Petitioner's judgment became final 90 days later, on April 13, 2010, see Harris, 515 F.3d at 1053 n.1, and Petitioner had one year from that date or until April 13, 2011, absent tolling, to file his federal petition for habeas corpus. See 28 U.S.C. § 2244(d)(1); Gonzalez, 132 S. Ct. at 646.

The limitations period ran until Petitioner filed the present Petition on June 13, 2012. (Doc. No. 15.) See Rasberry v. Garcia, 448 F.3d 1150, 1155 (9th Cir. 2006) (holding a habeas petition filed after a previously dismissed petition does not relate back to the original petition for calculating the statute of limitations). This was 2 years, 1 month and 25 days after the date the statute of limitations began to run. Accordingly, absent tolling the Petition is barred by AEDPA's statute of limitations. See 28 U.S.C. § 2244(d)(1); Gonzalez, 132 S. Ct. at 646.

### B. Statutory Tolling

AEDPA's one-year limitations period is tolled during the pendency of any "properly filed" collateral attack in the state courts. 28 U.S.C. § 2244(d)(2); Artuz v. Bennet, 531 U.S. 4, 7-8 (2000). Here, Petitioner never had a properly filed habeas petition pending in state court. Therefore, Petitioner is not eligible for statutory tolling under § 2244(d)(2). Petitioner is also not eligible for statutory tolling during the time from when he filed his first federal petition for habeas corpus–June 2, 2011–to when he filed the present Petition–June 13, 2012. See Duncan v. Walker, 533 U.S. 167, 172 (2001) (holding that "a properly filed federal habeas petition does not toll the limitation period"); Corjasso v. Ayers, 278 F.3d 874, 879 (9th Cir. 2002). Accordingly, Petitioner

---

[1] The California Court of Appeal issued its remittitur six days later, on January 19, 2010. (Lodgment No. 10.) However, the 90-day period for filing a petition for certiorari with the United States Supreme Court commences on the date the California Supreme Court denies the petitioner's petition for review not the date the remittitur is issued. See King v. Cate, 2009 U.S. Dist. LEXIS 89854, at *10-11 (C.D. Cal. Aug. 19, 2009), adopted by 2009 U.S. Dist. LEXIS 89857 (C.D. Cal. Sept. 29, 2009); Tanner v. Kramer, 2007 WL 2853930, at *3 (S.D. Cal. Sept. 26, 2007).

is not entitled to statutory tolling of the limitations period.

### C. Equitable Tolling

AEDPA's statute of limitations provision is subject to equitable tolling if the petitioner can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted); accord Velasquez, 639 F.3d at 968-69. The Petitioner "must show that some 'external force' caused his untimeliness, rather than mere 'oversight, miscalculation or negligence.'" Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011). In other words, the petitioner must have been delayed by circumstances beyond his control. Id. This high bar is necessary to effectuate AEPDA's statutory purpose of encouraging prompt filings in federal court. See Carey v. Saffold, 536 U.S. 214, 226 (2002); see also Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1289 (9th Cir. 1997), overruled in part on other grounds by 163 F.3d 530 (9th Cir. 1998) (stating that district courts should "take seriously Congress's desire to accelerate the federal habeas process."). The petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002); accord Rasberry, 448 F.3d at 1153.

Here, Petitioner has not argued that he is entitled to equitable tolling or made any arguments or presented evidence that could support a claim of equitable tolling. Any claim of ignorance of the statute of limitations or statutory tolling rules does not constitute an extraordinary circumstance warranting equitable tolling. See Rasberry, 448 F.3d at 1154 (holding that a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling); see also Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) ("We have . . . stressed that equitable tolling is unavailable in most cases" (quotation marks omitted)). Therefore, Petitioner has not met his burden of showing that equitable tolling should be applied in this case. Accordingly, the instant Petition is time barred pursuant to the one-year statute of

limitations provision in 28 U.S.C. § 2244(d)(1), and the Court grants Respondents' motion to dismiss the Petition.

## II. The Merits Of The Petition

### A. Standard of Review

A petitioner in state custody pursuant to the judgment of a state court may challenge his detention only on the grounds that his custody is in violation of the United States Constitution or the laws of the United States. 28 U.S.C. § 2254(a). Under AEDPA, the Court may only grant a habeas petition when the underlying state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (d)(2).

To determine what constitutes "clearly established federal law" under 28 U.S.C. § 2254(d)(1), courts look to Supreme Court holdings existing at the time of the state court decision. See Lockyear v. Andrade, 538 U.S. 63, 71-72 (2003). A state court's decision may be found to be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) if the state court confronts a set of facts "materially indistinguishable" from a decision of the Court, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lockyear, 538 U.S. at 72-75. A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases, but unreasonably applies it to the facts of a particular state prisoner's case," or if a state court incorrectly extends the established rule to a new context, or refuses to extend it to a new context where it should apply. Williams, 529 U.S. at 407; Lockyear, 538 U.S. at 76. To be an unreasonable application of federal law, the state court

decision must be more than incorrect or erroneous; it must be objectively unreasonable.[2] Id. at 75.

Federal courts apply AEDPA standards to "the last reasoned decision" by a state court addressing the merits of the claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The last reasoned decision by the state court addressing these issues is the California Court of Appeal's November 10, 2009 unpublished opinion in People v. Bush, D053565. (Lodgment No. 7.)

### B. Sufficiency of the Evidence for Gang Enhancement

Petitioner alleges that the imposition of a street gang sentencing enhancement violated his due process rights. (Doc. No. 15 at 6.) Specifically, Petitioner argues that the evidence at trial failed to show that Petitioner committed the Madrigal robbery in association with a criminal street gang or with specific intent to promote, further, or assist criminal conduct by gang members. (Id.)

A constitutional due process challenge to the sufficiency of the evidence to support a conviction is evaluated under the clearly established Supreme Court law from Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). A habeas petitioner challenging a state criminal conviction based upon sufficiency of the evidence is only entitled to relief "if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. Whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt is viewed in the light most favorable to the prosecution. Id. at 318-19.

---

[2] AEDPA has two provisions to guide federal courts reviewing state factual determinations. First, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determinates that the state court was not merely wrong, but actually unreasonable." Taylor v. Maddox, 366 F.3d 992, 999 (2004). Second, "'a determination of a factual issue made by a State court shall be presumed to be correct,' and [] this presumption of correctness may be rebutted only by 'clear and convincing evidence.'" Id. at 999 (citing 28 U.S.C. § 2254(e)(1)). For example, a state court unreasonably determines a fact when it (1) fails to make a factual finding when it should have, (2) makes a factual finding under the wrong legal standard, (3) makes a factual finding when the fact-finding process is defective, (4) misstates the record in making a factual finding, and (5) makes a finding of fact when it has before it, yet apparently ignores, evidence supporting a contrary outcome. Id. at 1000-01.

Even if the record contains facts that support conflicting inferences, a reviewing court must presume that the trier of fact resolved any conflicts in favor of the prosecution, and defer to that determination. Id. at 326. Additionally, after AEDPA, federal habeas courts apply the standard "with an additional layer of deference to the state court result." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

In determining that sufficient evidence supported Petitioner's conviction, the California Court of Appeal used a state law standard identical to the Jackson standard. (Lodgment No. 7 at 7 (applying People v. Kraft, 23 Cal. 4th 978, 1053 (2000).) The state court's decision was not an unreasonable application of the standard to the facts of this case.

The state trial court imposed a criminal street gang enhancement on Petitioner pursuant to California Penal Code § 186.22(b)(1). (Lodgment No. 1 at 209.) To impose this enhancement, the jury was required to find beyond a reasonable doubt that at least one of the felonies Petitioner was convicted of was "[1] committed for the benefit of, at the direction of, or in association with any criminal street gang, [2] with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1); see People v. Sengpadychith, 26 Cal. 4th 316, 326 (2001). Based on the record, the California Court of Appeal affirmed the enhancement, concluding that a jury reasonably could find beyond a reasonable doubt that the Madrigal robbery was committed for the benefit of the 5/9 Brim gang and with specific intent to promote criminal conduct by gang members. (Lodgement No. 7 at 9, 12.) The Court agrees.

Petitioner testified that when he saw Madrigal in her car, he was suspicious of her and thought she might be the police, so he brandished his gun to her to demonstrate to her that "this is how it goes around here" and to confront her about where she was going. (Lodgment No. 2 at 444, 448-49.) Madrigal testified that when she got out her car, Petitioner began running at her and pointed his gun and said "What the hell are you doing here, b****? This is not your territory." (Id. at 144.) Petitioner took Madrigal's

cell phone and $1,200. (Id. at 145-46.)

Petitioner was wearing 5/9 Brim gang colored clothing at the time of the incident, red shorts. (Lodgement No. 2 at 141, 270-71.) Petitioner has a tattoo on his arm that says "Brim." (Id. at 253-54, 332.) Petitioner admitted that he joined the 5/9 Brim when he was 12, but stated that he left the gang when he was 16. (Id.) Petitioner testified that all his friends and family are gang members, but he is no longer a gang member. (Id. at 333.) Another witness testified that Petitioner told her that his nickname was "Get Low" and that he was "On the B," which meant that he was associated with or a member of the Brims or the Bloods gang. (Id. at 84-86; 118-19.)

In addition, the record includes testimony from the government's gang expert, Detective Cahill. Cahill testified that the 5/9 Brim are a "Blood" set, (Lodgment No. 2 at 262, 270), and the area where the robbery occurred was a known hangout for 5/9 Brim gang members. (Id. at 266, 305-06.) Further, Cahill testified that 5/9 Brim gang members were known to commit violent acts, such as robberies, car-jackings, and assaults to gain respect and instill fear within the community and gain respect within the gang. (Id. at 270-71, 285-86, 311-12.) Cahill testified that property crimes benefit the gang because the particular gang member will only get a portion of any money received, and the rest of the money will go to gang activities such as partying, purchasing drugs and guns, and giving money to less fortunate gang members. (Id. at 312-13.) Cahill opined that Petitioner is a documented 5/9 Brim gang member based on his criminal record, which included auto theft, his history of being "contacted" with other gang members, and the "Brim" tattoo on his arm. (Id. at 287, 311.) Cahill also testified that in a 2004 field interview with a police officer, Petitioner claimed 5/9 Brim gang membership and wore a "B" belt buckle associated with the Brim gang. (Id. at 287-88.)

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that Petitioner committed the robbery of Madrigral for the benefit of the 5/9 Brim criminal street gang and with intent to promote criminal conduct

by gang members. See Jackson, 443 U.S. at 318-19; Cal. Penal Code § 186.22(b)(1). Therefore, the Court of Appeal's decision was not contrary to or an unreasonable application of clearly established Supreme Court law.

### C. Gang Expert Testimony

Petitioner alleges that the state trial court erred when it allowed the government's gang expert, Detective Cahill, to testify about Petitioner's specific intent to promote criminal conduct by gang members. (Doc. No. 15 at 7.) At trial, the prosecutor asked Detective Cahill, "Were these acts done with the intent of promoting the gang and also promoting his reputation within that gang." (Lodgement No. 2 at 293.) The trial court allowed Cahill to answer "yes" over Petitioner's objection. (Id. at 293-94.) On appeal, the California Court of Appeal concluded that the trial court erred by allowing the expert to opine on Petitioner's actual intent to promote the gang. (Lodgement No. 7 at 13-14 (citing People v. Ward, 36 Cal. 4th 186, 210 (2005); People v. Killebrew, 103 Cal. App. 4th 644, 658 (2002)).) But, the Court of Appeal concluded that it was harmless error and affirmed the gang enhancement. (Id. at 14-15.) The Court of Appeal explained:

> As we have determined, apart from Cahill's opinion on specific intent, the record provides substantial evidence that [Petitioner] Bush had the specific intent to "promote, further or assist" criminal conduct by 5/9 Brim gang members when he robbed Madrigal. In addition, the verdict strongly suggests the jury did not rely solely on the improperly-admitted expert opinion, but conscientiously weighed the evidence. Bush was charged with a criminal gang sentence enhancement on three robbery counts and a carjacking count. Although Cahill expressed the opinion that Bush acted with the specific intent to promote the criminal conduct of the gang as to the crimes described in all four counts, the jury made a true finding on the gang enhancement allegation only as to the robbery count involving Madrigal. In so doing, the jury must have differentiated the Madrigal robbery from the other incidents on the basis of evidence other than the inadmissible expert opinion. It is therefore not reasonably probable that the result would have been more favorable to Bush had his objection to the improper expert testimony been sustained.

(Id.)

A state trial court's evidentiary ruling usually does not present a federal question. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal

1  habeas court to reexamine state-court determinations on state-law questions.  In
2  conducting habeas review, a federal court is limited to deciding whether a conviction
3  violated the Constitution, laws, or treaties of the United States.").  Therefore, the Court
4  may not address the question of whether there was a state law violation, but only
5  whether the state court unreasonably applied United States Supreme Court law.  See
6  Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991); see also 28 U.S.C. §
7  2254(d).

8        Federal habeas relief is available for improperly admitted expert testimony only
9  if the error rendered the trial so fundamentally unfair as to violate due process.  Estelle,
10 502 U.S. at 68, 70; see also Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998).
11 The Ninth Circuit has explained that there is no clearly established Supreme Court law
12 holding "that the Constitution is violated by the admission of expert testimony
13 concerning an ultimate issue to be resolved by the trier of fact."  Moses v. Payne, 555
14 F.3d 742, 761 (9th Cir. 2009); see also Briceno v. Scribner, 555 F.3d 1069, 1078 (9th
15 Cir. 2009) ("[T]there is no clearly established constitutional right to be free of an expert
16 opinion on an ultimate issue.").  To the contrary, in federal court "'[i]t is
17 well-established . . . that expert testimony concerning an ultimate issue is not per se
18 improper.'"  Moses, 555 F.3d at 1078.  Therefore, admission of the expert testimony
19 was not contrary to or an unreasonable application of Supreme Court law.  See, e.g.,
20 Briceno, 555 F.3d at 1077 (rejecting the petitioner's habeas claim based on the
21 admission of expert testimony where the expert testified that it was his opinion that the
22 crimes were committed for the benefit of the gang).

23       Further, even assuming the admission of the testimony amounted to a violation
24 of due process, Petitioner is only entitled to habeas relief if he can show that the error
25 "'had substantial and injurious effect or influence in determining the jury's verdict.'"
26 Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); accord O'Neal v. McAninch, 513
27 U.S. 432, 436 (1995).  As the Court of Appeal explained, here, the record shows that
28 the admission of the expert testimony did not have a substantial effect or influence on

the jury in determining the verdict. Although Cahill testified about Petitioner's intent with respect to all four gang enhancement charges, the jury only made a true finding as to the Madrigal robbery count. (Lodgment No. 1 at 145-59; Lodgement No. 7 at 14-15.) Therefore, the jury must have differentiated that robbery from the other incident on the basis of evidence other than Cahill's opinion about Petitioner's intent. Accordingly, Petitioner would not be entitled to habeas relief even if the admission of the expert testimony constituted a constitutional violation.

Petitioner also alleges that the gang expert fabricated testimony and lied to the trial court and the jury because he had no prior knowledge of Petitioner being in a gang and had no prior contact with Petitioner before the crimes. (Doc. No. 15 at 7.) This claim is without merit. In the Petition, Petitioner fails to specifically allege how the expert fabricated testimony and lied under oath. The Petition contains only conclusory allegations. "It is well-settled that 'conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (citing James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)). Further, the record shows that Detective Cahill was qualified to testify as an expert on the 5/9 Brim gang, and that his testimony was not fabricated. (See Lodgment No. 2 at 259-66.) Rather, his opinion was based on the 2004 field interview where Petitioner claimed 5/9 Brim gang membership, Petitioner's criminal record, Petitioner's history of being "contacted" with other gang members, and the "Brim" tattoo on Petitioner's arm. (Id. at 287-88.) Accordingly, Petitioner has failed to establish that he is entitled to habeas relief based on the gang expert's testimony at trial.

**III.     Denial of Certificate of Appealability**

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability from the district court judge or a circuit judge. 28 U.S.C. § 2253(c)(1)(A). A court may issue a certificate of appealability only if the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when a district

1 court has rejected the constitutional claims on the merits, the petitioner must show that
2 "reasonable jurists would find the district court's assessment of the constitutional claims
3 debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a district
4 court denies the petition of procedural grounds, the petitioner must show that "jurists
5 of reason would find it debatable whether the petition states a valid claim of the denial
6 of a constitutional right and that jurists of reason would find it debatable whether the
7 district court was correct in its procedural ruling." Id. In the present case, the Court
8 concludes that petitioner has not made such a showing and therefore the Court denies
9 Petitioner a certificate of appealability.

## **CONCLUSION**

The Petition is barred by the statute of limitations, and Petitioner has not established that the state court's determination "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See 28 U.S.C. §§ 2244(d)(1), 2254(d). Accordingly, the Court adopts the magistrate judge's report and recommendation, grants Respondents' motion to dismiss, and denies the petition for habeas corpus. In addition, the Court denies Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

DATED: March 18, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT